IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CRIMINAL NUMBER 17-297 |
| : | |
| BAYQUIN ISRAEL AGUILAR-LOPEZ : | |

## DEFENDANT'S SENTENCING MEMORANDUM

Bayquin Israel Aguilar-Lopez files this memorandum in aid of mitigation at sentencing. The Presentence Investigation Report prepared by Senior United States Probation Officer Jacqueline S. Widmeier concludes the advisory range is 33-41 months based on a total offense level 18, Criminal History Category III. Given the particular facts and circumstances of this case, the defense suggests that a sentence of 33 months best fulfills the sentencing goals pursuant to *United States v. Booker*, 543 U.S. 220 (2005) and the subsequent cases reaffirming its holding, and 18 U.S.C. §3553(a).

### I. PROCEDURAL HISTORY

On April 23, 2017, Mr. Aguilar-Lopez was arrested locally in Montgomery County, Pennsylvania. On May 1, 2017, Mr. Aguilar-Lopez met with Immigration and Customs Enforcement officers and confirmed his lack of immigration status. Thereafter, on June 1, 2017, the United States Attorney's Office for the Eastern District of Pennsylvania filed an indictment charging Mr. Aguilar-Lopez with one count of Illegal Reentry in violation of 8 U.S.C. §§ 1326(a) and (b)(1). Mr. Aguilar-Lopez entered a guilty plea to the indictment on November 28, 2017. Sentencing is scheduled for March 13, 2018.

## II.   MR. AGUILAR-LOPEZ'S PERSONAL HISTORY

Mr. Aguilar-Lopez had a life which was very similar to the people which this Court usually sees charged with offenses such as these.  He grew up in a very close knit family which struggled with poverty.   At age 25, he immigrated to this country for work in order to provide his family, specifically his children, with the means to live a better life.  After five years in this country, he was deported following a criminal conviction.  At that point when he returned to El Salvador he reencountered the violence and political instability which lead him to leave in the first place.  He was unable to earn a living wage because the many gangs which are pervasive in El Salvador extorted him for money under threat of physical violence.

Faced with the reality of working to pay the gangs while his family suffered, Mr. Aguilar-Lopez made the decision to return to the United States.  He was encountered at the border by Border Patrol, and prosecuted for Illegal Reentry pursuant to 8 U.S.C. § 1326.  After serving just under a year he was deported a second time and returned to El Salvador.  Faced with the same violence and uncertainty, he unfortunately returned to the United States a third time.  This time he settled in Maryland and worked in construction which allowed him to send money home to his family to provide for his children and their education.

Mr. Aguilar-Lopez was arrested on April 23, 2017 following a motor vehicle stop.  He has remained in custody since that time and will not receive credit for the time he served from his arrest until his transfer to federal custody on June 2, 2017.  This experience has impacted him deeply and has served the deterrent effect given the fact that his current guideline range is triple what he previously served on an offense such as this.  Additionally, he knows that the current political climate and applicable sentencing guidelines supports the implementation of harsher penalties for aliens with histories of prior convictions and deportations, which has now increased

as a result of this prosecution. This further reinforces the need for him to refrain from reentering the United States.

## III.  APPLICATION OF THE STATUTORY FACTORS TO THIS CASE

The Court must consider all of the factors identified in 18 U.S.C. §3553(a) and impose a sentence that is "sufficient, but not greater than necessary" to satisfy the purposes of sentencing. 18 U.S.C. §3553(a)(1).

### A.  The Nature and Circumstances of the Offense and History and Characteristics of Mr. Aguilar-Lopez

Mr. Aguilar-Lopez's work history and work ethic all weigh in favor of a sentence of 33 months.

### B.  The Need for the Sentence Imposed to Promote Certain Statutory Objectives

*1.  To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.*

Mr. Aguilar-Lopez's period of incarceration is especially difficult given his inability to help his family. He was providing them with income which they are now lacking. The guidelines generally account for harm, but not at all for the motive for committing the offense, which is highly relevant. Mr. Aguilar-Lopez understands that he should not have returned to the United States and is acutely aware of the potential for additional punishment in this and future cases. A sentence of 33 months would not promote a lack of respect for the law as Mr. Aguilar-Lopez is presently incarcerated and will remain in custody until he completes this sentence, which would be at least an additional two years from now. Furthermore, as the Court is aware, deportations are not immediate and Mr. Aguilar-Lopez is likely to be incarcerated beyond whatever sentence this Court imposes.

2. *To afford adequate deterrence to criminal conduct.*

A sentence above 33 months is neither warranted nor necessary to further deter Mr. Aguilar-Lopez from returning. He understands what he would likely face if he returns in the future, which is unfathomable to him given his present guideline range. Mr. Aguilar-Lopez has been incarcerated since April 23, 2017, but will only receive credit towards this Court's sentence from June 2, 2017 forward. Mr. Aguilar-Lopez is very much aware of the significant period of incarceration he faces both and now and in the future should he to return again. Moreover, the fact that Mr. Aguilar-Lopez was prosecuted for this offense, in lieu of immediate deportation, should serve as sufficient deterrence.

3. *To protect the public from further crimes of the defendant.*

Mr. Aguilar-Lopez poses no threat to the public. He will be returned to immigration custody for deportation upon completion of his sentence. Protection of the public is of diminished concern in this case.

**C. Kinds of Sentences Available**

The range of sentences statutorily available to the Court, including the advisory guidelines range, are listed in Part D of the PSR. This range includes a sentence of incarceration of up to ten years, not more than three years of supervised release, a fine of up to $250,000. Section 5D1.1(c) discourages the Court from imposing a period of supervised release. It reads as follows: The court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment. Moreover, the Third Circuit recently recognized the presumption against imposing supervised release in cases where the defendant is a deportable immigrant. See United States v. Azcona-Polanco, __ F.3d __, 2017 WL 3184723, *1 (3d Cir.

July 27, 2017).

Although Mr. Aguilar-Lopez does have a prior conviction for Illegal Reentry, the sentence he received for that offense is nothing compared to what he is presently facing. The current prosecution differs greatly from his prior contact at the border given the sentencing exposure he is facing. As such, the defense is requesting that the Court sentence Mr. Aguilar-Lopez to a term of 33 months, which represents the bottom of the guideline range1 and is exponentially higher than he previously served in connection with his conviction.

IV. **CONCLUSION**

Based on the above reasons, the defense respectfully requests the Court impose a sentence of 33 months.

Respectfully submitted,

 s/Maria A. Pedraza
MARIA A. PEDRAZA
Assistant Federal Defender

---

1 The Government has indicated that it will not be moving for the application of a downward departure pursuant to U.S.S.G. § 3E1.1(b) based on the litigation of a motion to dismiss. The defense does not dispute that case law supports the Government's position. From the standpoint of the §3553(a) considerations which direct the Court to avoid sentencing disparities among similarly situated defendants, it is relevant to note that the Government moved for the third point reduction in the matter of United States v. A.M.M., Criminal Number 17-379 (Surrick, J.). A motion to dismiss the Illegal Reentry charge was also litigated in that matter. In addition to the Illegal Reentry charge, that matter included a charge for Assaulting a Federal Officer. Had this additional level been subtracted from Mr. Aguilar-Lopez's offense level, the resulting advisory guideline range would have been 30-37 months.

# CERTIFICATE OF SERVICE

I, Maria A. Pedraza, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have electronically filed and served a copy of the Defendant's Sentencing Memorandum by electronic notification and/or electronic mail, upon Andrew Schell, Assistant United States Attorney.

                                             /s/ Maria A. Pedraza
                                             MARIA A. PEDRAZA
                                             Assistant Federal Defender

DATE:       March 8, 2018